

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/06/2018

| | | |
|---|---|---|
| **IN RE:** | § | |
| **NORTHSTAR OFFSHORE GROUP, LLC** | § | **CASE NO: 16-34028** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **NORTHSTAR OFFSHORE GROUP, LLC** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-03406** |
| | § | |
| **A&B VALVE AND PIPING SYSTEMS,** | § | |
| **LLC,** *et al* | § | |
| **Defendant(s)** | § | |

## MEMORANDUM OPINION

Northstar Offshore Group, LLC, filed an adversary proceeding against 26 named defendants in order to determine the extent, validity, and priority of materialmen's and mechanic's liens ("M&M Liens") asserted for work performed on 13 of Northstar's oil and gas producing assets.  (ECF No. 1 at 11).  After Northstar filed its complaint on September 27, 2017, several of the parties reached settlement agreements with Northstar and were dismissed from this adversary proceeding.  However, 5 parties did not settle and dispute Northstar's treatment of their M&M Liens: Costal Crewboats, Inc. ("Coastal"); Diverse Scaffold Solutions, LLC ("DSS"); Stallion Offshore Quarters, Inc. ("Stallion"); Wood Group PSN, Inc. ("Wood Group"); and National Oilwell Varco, LP ("NOV"). [1]

Northstar argues that these M&M Lien Claimants do not qualify as Senior Statutory Liens as defined in its Sale Order because they are junior to existing liens on the properties, the properties at issue had negative values as of the petition date rendering the M&M liens

---

[1] These parties are collectively referred to as the "M&M Lien Claimants."

unsecured deficiency claims, and the M&M Liens are invalid or unenforceable. (ECF No. 1 at 23). The M&M Lien Claimants argue that they hold valid, perfected liens and a fact question exists regarding the valuation of the oil and gas leases which should be determined at trial. (*See* ECF Nos. 51, 63). Northstar and the Defendants both filed cross-motions for summary judgment.

Northstar's motion for summary judgment is denied. The Defendants' motions for summary judgment are granted in part and denied in part.

## Background

Northstar is an oil and gas company headquartered in Houston, Texas, which focused on offshore oil and gas exploration. (Case No. 16-34028; ECF No. 106 at 5). In 2012, Northstar shifted its business from actively producing oil and gas wells to the discovery of new oil fields and began leveraging debt to finance its exploration and test drilling. (Case No. 16-34028; ECF No. 106 at 6–7).

By the second half of 2014, oil prices began to drop, which also coincided with a criminal fraud investigation into the Platinum Partner entities that formed Northstar's parent organization. (Case No. 16-34028; ECF No. 106 at 25). These events caused Northstar to experience a liquidity crisis and made it difficult to continue operating in the Gulf of Mexico. (Case No. 16-34028; ECF No. 106 at 25).

Northstar's financial situation came to a head on August 12, 2016, when three creditors filed an involuntary bankruptcy petition for Northstar pursuant to 11 U.S.C. § 303. (Case No. 16-34028; ECF No. 106 at 25). At Northstar's request, the Court granted relief and converted Northstar's case to a voluntary case under chapter 11 on December 2, 2016. (Case No. 17-

03448; ECF No. 15 at 7).   The Court confirmed Northstar's Second Amended Plan of Liquidation on December 22, 2017.  (*See* Case No. 16-34028; ECF No. 1078).

As part of its bankruptcy proceeding, Northstar sold substantially all of its oil and gas assets to Northstar Offshore Ventures, LLC ("Ventures"), which purchased those assets free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363.  (Case No. 16-34028; ECF No. 792).  Northstar then filed an adversary proceeding on September 27, 2017, to determine the validity, extent, and priority of M&M Liens asserted by 26 named defendants against the properties that were ultimately sold to Ventures.  (*See* ECF No. 1).

The amounts claimed by each of the M&M Lien Claimants relate to labor, services, and materials provided for Northstar's oil and gas leases.  (ECF No. 20 at 5).  Northstar does not dispute that the work was performed, nor does it dispute the amounts owed.  (ECF No. 20 at 5).  A summary of the amounts each M&M Lien Claimant asserts in its liens is reproduced below:

| M&M Lien Claimant | Property | Amount Owed |
|---|---|---|
| Coastal | West Cameron 20 | $24,343.00 |
| DSS | High Island 571 | $10,157.64 |
| NOV | Eugene Island 184 | $60,635.23 |
| NOV | South Pass 86 | $28,901.22 |
| NOV | Ship Shoal 202 | $32,283.00 |
| NOV | West Cameron 20 | $321,227.68 |
| NOV | West Cameron 269 | $29,233.17 |
| NOV | High Island 443 | $3,297.33 |
| NOV | High Island 557 | $64,392.64 |
| Stallion | High Island 571 | $5,460.00 |
| Stallion | High Island 571 | $4,216.00 |
| Wood Group | High Island 443 | $11,884.75 |
| Wood Group | South Pass 86 | $68,089.93 |
| Wood Group | West Cameron 20 | $60,411.86 |

Although Northstar accepts its indebtedness to the M&M Lien Claimants, it disputes the validity and priority of their liens.  Northstar asserts that the M&M Lien Claimants' asserted liens cannot qualify as Senior Statutory Liens because the oil and gas leases to which they

purportedly attached each had negative valuations on the petition date due to large Plugging and Abandonment ("P&A") liabilities. (ECF No. 1 at 9). In Northstar's view, under the terms of the Sale Order, only Senior Statutory Liens survived the sale of the assets, and since these properties do not qualify as Senior Statutory Liens, they were sold free and clear of these purported liens pursuant to 11 U.S.C. § 363(m). (Case No. 16-34028; ECF No. 792-1 at 48 "Definition of Permitted Encumbrances").

**Jurisdiction**

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension*

*Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate

the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

### I.    *Evidentiary Objections*

In its response to Northstar's motion for summary judgment, NOV objected to Northstar's expert report of Mr. P. Dee Patterson regarding the valuation of the oil and gas leases. (ECF No. 63 at 13). Specifically, NOV claims that the lack of a supporting affidavit or declaration renders the evidence inadmissible hearsay. (ECF No. 63 at 13–14). Northstar responds that because Patterson had previously testified before the Court regarding valuation of oil and gas properties, was subjected to voir dire examination, and deemed a qualified expert by the Court, no declaration from Mr. Patterson is required. (ECF No. 65 at 10–11).

A court considering summary judgment evidence is not restricted to the presentation of presently admissible evidence; however, a party may object that cited evidence is presented in a form that would be inadmissible evidence.  FED. R. CIV. P. 56(c)(2); *see also LSR Consulting, LLC v. Wells Fargo Bank, NA*, 835 F.3d 530 (5th Cir. 2016) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'").  The burden then shifts to the proponent of the evidence to demonstrate that the evidence is admissible or "explain the admissible form that is anticipated."  Advisory committee note to 2010 amendment of FED. R. CIV. P. 56(c)(2).

NOV has presented an objection to Northstar's alleged expert testimony, namely that it lacks a supporting affidavit as required by Rule 56(c)(1)(A).  However, the evidence presented at summary judgment is not required to be admissible in its current form.  *LSR Consulting*, 835 F.3d at 534.  Additionally, Patterson's previous testimony as an expert in this case before the Court demonstrates that the evidence in question may ultimately be presented as admissible evidence.  As a result, NOV's objection regarding Patterson's expert report is denied.

## II.    *Valuation of the Properties*

The primary issue at the center of this dispute involves the valuation of the oil and gas leases on which the Defendants claim their M&M liens.  Northstar asserts that each of these leases had a negative valuation due to P&A liabilities as of December 2, 2016, when Northstar filed its voluntary petition.  (ECF No. 48 at 10).  In turn, there was no value for the M&M Lien Claimant's purported liens to attach, leaving them with unsecured claims rather than secured liens.  (ECF No. 48 at 11).  The lien claimants dispute this treatment, arguing that the appropriate valuation for these leases should take into account the Sale Order, which shifted the P&A

Liability onto the buyer who has assumed Northstar's obligations.  (ECF No. 57 at 7).   This broad dispute was subsequently narrowed to two specific issues for summary judgment:

i.   Whether the terms of the Sale Order which state, "the Allocated Value of the Assets have no preclusive effect in any proceeding to determine whether a lien is a Senior Statutory Lien" prevent the Court from considering those values on summary judgment; and

ii.   Whether the definition of a Senior Statutory Lien which utilizes the language "as of the petition date" in the DIP Order includes the time period before or after Northstar filed its voluntary petition.

*A. Preclusive Effect of Sale Order on Valuations*

The Sale Order which approved the sale of Northstar's assets free and clear of liens and encumbrances contains a section which states: "Notwithstanding anything contained in this Order or the Purchase Agreement to the contrary, the Allocated Value of the Assets *shall have no preclusive effect* in any proceeding to determine whether a lien is a Senior Statutory Lien." (Case No. 16-34028; ECF No. 792 at 25–26).   Attached to the Sale Order was Schedule 2.2 which contained the Allocated Values to each of the oil and gas leases in question.   Nine of the eighteen oil and gas leases had positive Allocated Values.  (Case No. 16-34028; ECF No. 792-1 at 144).   The parties adopted opposing views regarding this portion of the Sale Order.   The M&M Lien Claimants argue that this language enables them to use the Allocated Values as evidence of a fact issue regarding valuation.  (ECF No. 85 at 3).   On the other hand, Northstar claims that the phrase "no preclusive effect" renders the Allocated Value devoid of evidentiary weight.  (ECF Nos. 85 at 3; 87 at 2).

Northstar concedes (ECF No. 85 at 3) and case law supports the idea that preclusive effect and evidentiary weight are separate and distinct considerations a court may independently consider.   *See Garcia v. Clinton*, 881 F. Supp.2d 807, 812 (S.D. Tex. 2012) (holding that although Texas state administrative decision was given no preclusive effect it may still have

evidentiary weight); *In re Metroplex on the Atlantic, LLC*, 545 B.R. 786, 800 (Bankr. E.D.N.Y. 2016) (separately examining whether a judgment determining value had preclusive effect or evidentiary weight).   Accordingly, although the phrase "no preclusive effect" may dictate whether the Allocated Values apply in the context of issue preclusion or collateral estoppel, the phrase has no bearing on whether the Court may consider the evidentiary weight of the Allocated Values in Schedule 2.2 which are reproduced in the table below:

| Area / Block | Allocated Value (M$) |
|---|---|
| A-443 | $5,024,790.00 |
| HI A-571 | $8,248,240.00 |
| MP 64 | $1,127,400.00 |
| MP 256/VK 697 | $142,000.00 |
| SP 89 | $95,530.00 |
| SS 252 | $526,940.00 |
| EI 183/184 | $(674,450.00) |
| SM 41 | $(367,430.00) |
| SP 86 | $109,870.00 |
| WC 20 | $(333,620.00) |
| WC 21 | $(194,040.00) |
| WC 44 | $(39,260.00) |
| WC 57 | $143,970.00 |
| HI A-442 $ | $(223,160.00) |
| SS 202 | $(121,380.00) |
| WC 269 | $(136,510.00) |
| WD 36 | $(73,820.00) |
| Other Causes of Action | D&O $25,000.00 |
| **Total** | **$ 13,250,000.00** |

Despite its concession, Northstar claims that only one of the leases in question, South Pass 86, received a positive valuation in Schedule 2.2.  (ECF No. 85 at 3).  Northstar claims that this supports awarding summary judgment regarding the evidentiary weight of the Allocated Values to the balance of the oil and gas leases.  (ECF No. 85 at 3).  However, two additional properties at issue, High Island 443 and High Island 571, had positive Allocated Values according to Schedule 2.2.  As a result, the M&M Lien Claimants have raised a genuine issue of

fact regarding three oil and gas leases and Northstar's motion for summary judgment is denied regarding: South Pass 86, High Island 443 and High Island 571.

### B.  Timing of the Valuation "As of the Petition Date"

The second issue invokes specific language in the DIP Order which defines Senior Statutory Liens as liens that are "(i) valid, enforceable and non-avoidable *as of the Petition Date*, (ii) timely perfected before or after the Petition Date as permitted by § 546(b) of the Bankruptcy Code, and (iii) senior in priority to the security interests and liens of the Prepetition Secured Parties."  (Case No. 16-34028; ECF No. 326 at 16).

Orders of the bankruptcy court are interpreted according to the usual rules of contract construction.  *See In re XO Comms., Inc.*, 330 B.R. 394, 432 (Bankr. S.D.N.Y. 2005) (reiterating that "fundamental rules of contract interpretation apply to bankruptcy orders"); *In re Felt Mfg. Co., Inc.*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009) ("The terms of court orders, plan of reorganizations, and stipulations between parties are typically examined under principles of contract interpretation." (Citations omitted.)).  A court's overriding question when interpreting a contract is determining the parties' intent to give effect to their intentions.  *Reliant Energy Serv., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003).  Contract interpretation first requires examining the "four corners" of the contract and only considers extrinsic evidence if the contract is ambiguous.  *Dean v. City of Shreveport*, 438 F.3d 448, 460–61 (5th Cir. 2006).  A contract is deemed ambiguous if it is reasonably susceptible to more than one interpretation.  *Dean,* 438 F.3d at 461 (quoting *N. Shore Lab Corp. v. Cohen*, 721 F.2d 514, 519 (5th Cir. 1983)).

Specifically, the use of "as of the Petition Date" in the Senior Statutory Liens definition gives rise to two interpretations in which the enforceability of a lien could be determined both

before or after the bankruptcy petition was filed, as long as it was valid on the Petition Date.  If "as of the Petition Date" is limited to the time before Northstar filed its voluntary petition, the definition of a Senior Statutory Lien is inherently untethered from the definition of secured status in 11 U.S.C. § 506(a)(1) and determined by state law.  However, if the definition of Senior Secured Lien includes the time remaining on the Petition Date after the voluntary petition was filed, § 506(a)(1) limits a creditor's secured claim to the value of the creditor's interest and is unsecured for the balance of the claim that is not secured.  It is important to note that this discussion regarding the valuation of the properties and § 506(a)(1) addresses whether a positive value existed in the oil and gas leases so the M&M Lien Claimants' purported liens could attach.  The present issue does not deal with § 506(a)(1) in the context of a dispute between creditors attempting to establish priority in collateral.

Northstar urges the Court to adopt an interpretation that "as of the Petition Date" includes the time remaining on the Petition Date after the bankruptcy petition was filed.  (ECF No. 85 at 7).  Northstar specifically points to the definition of Petition Date in the DIP Order and specific treatment of prepetition liens as evidence supporting the parties' intent that "as of the Petition Date" refers to the time after the petition was filed and invoking the application of § 506.

Conversely, the M&M Lien Claimants point to the use of the word "enforceable" in the definition of Senior Statutory Lien as evidence that "as of the Petition Date" can only mean before the filing of the bankruptcy petition because the automatic stay would necessarily foreclose the enforcement of any lien after the bankruptcy petition was filed.  (ECF No. 84 at 4).

In isolation, both Northstar and the M&M Lien Claimants have produced reasonable interpretations of the phrase "as of the petition date."  However, this phrase is unambiguous

when viewed in context of other provisions of the Senior Statutory Lien definition. *Dean,* 438
F.3d at 461 (quoting *N. Shore Lab Corp. v. Cohen*, 721 F.2d 514, 519 (5th Cir. 1983)).

Romanette (ii) of the definition allows that such lien may be "timely perfected before or
after the Petition Date as permitted by section 546(b) of the bankruptcy code."  (Case No. 16-
34028; ECF No. 326 at 16).  This indicates the intent of the parties that certain liens would be
recognized and deemed enforceable *after* the petition was filed, so long as perfection occurred in
accordance with § 546(b).

Additionally, the third portion of the definition in the DIP order specifically mentions that
the Senior Secured Liens must be "senior in priority to the security interests and liens of the
Prepetition Secured Parties."  (Case No. 16-34028; ECF No. 326 at 16).  The distinction between
Prepetition Secured Parties and Senior Statutory Liens in the DIP Order further reinforces the
intent of the parties that the Senior Statutory Liens include those deemed enforceable after the
filing of the bankruptcy petition.  If the parties intended to allow enforceable liens before the
bankruptcy petition was filed, there would be no reason to distinguish between the priorities of
the Senior Statutory Liens and the Prepetition Secured Parties.  Consequently, the definition of
"as of the Petition Date" must necessarily include the time period on the Petition Date after the
petition was filed, which in turn invokes § 506(a)(1)'s definition of a secured claim.

### C.  § 506(a)(1) Valuation Applied

Northstar claims that application of § 506 necessarily requires that the Court award
summary judgment because the definition of Senior Statutory Lien requires the collateral to be
valued as of the petition date.  (ECF No. 85 at 7).  The remaining properties in question each had
a negative value on the petition date according to Northstar, providing no interest for the estate
or creditors under § 506(a)(1).

However, Northstar's view reads too much into the DIP Order's definition of Senior Statutory Liens.  The DIP Order has just three requirements for a lien to qualify as a Senior Statutory Lien.  It must be valid, enforceable and nonavoidable; timely perfected; and senior in priority to the liens of the prepetition secured parties.  (Case No. 16-34028; ECF No. 326 at 16).  This definition is silent on valuation and when that valuation occurs.

Northstar purports that the statutory requirements of § 506(a)(1) impose the requirement that the creditor's secured claim is limited to the extent of the creditor's interest in the property.  (ECF No. 85 at 7).  Northstar's view of § 506(a)(1) ignores the remaining statutory language which specifically states that the value "shall be determined in light of the purpose of the valuation and of the proposed disposition and use of such property."

The Fifth Circuit's decision in *In re Houston Regional Sports Network, LP*, is instructive.  886 F.3d 523, 530–31 (5th Cir. 2018).  Although presented in the context of chapter 11 cramdown and plan confirmation, the Fifth Circuit emphasized that valuations under § 506(a) are flexible according to the statutory definition and that courts should determine the appropriate date of valuation on a case by case basis.  *Id.* at 531.  The Fifth Circuit further noted that bankruptcy courts may consider the development of the proceedings because the value of the collateral in question may shift dramatically depending on its disposition under the plan.  *Id.*

The collateral at issue here is a paradigmatic example of the Fifth Circuit's reasoning based on shifting valuations of collateral.  Northstar's expert testimony purports that when the voluntary petition was filed, each property's value was negative due to plugging and abandonment liability.  (ECF No. 48 at 10).  However, Schedule 2.2 demonstrates that for the purposes of Northstar's Confirmed Plan of Liquidation, once sold to Ventures, at least some of the properties had positive valuations by Northstar's own admission.  Accordingly, under the

Fifth Circuit's holding in *Houston Regional*, the Court cannot accept the petition date as the sole estimation for valuation under § 506(a)(1) without a further showing that this is the appropriate time based on the use and disposition of the collateral.

### D.  Valuation Evidence

As discussed above, Northstar's argument and summary judgment evidence is based on the fact that as of the voluntary petition date, in December 2016, each property had a negative value.  (ECF No. 48 at 10).  However, Northstar's motion fails to indicate or address why the voluntary petition date is the appropriate time to value these properties under § 506(a)(1).  (*See generally* ECF No. 48).  This is particularly important in light of the subsequent sale of some of these properties for positive amounts.  (Case No. 16-34028; ECF No. 792-1 at 144).  Thus, the remainder of Northstar's motion for summary judgment is denied.

Similarly, the M&M Lien Claimants assert in summary judgment motions that their purported liens are valid and enforceable as Senior Statutory Liens because they were timely perfected in accordance with applicable state law and are senior in priority to other liens.  (*See* ECF No. 51 "Summary Judgment Nos. 3–7").  Such a determination would require undisputed evidence that the subject properties had positive values at the appropriate date under § 506(a)(1), which the M&M Lien Claimants fail to provide.  (*See* ECF No. 51 at 11–17).

The M&M Lien Claimants first assert that they have valid liens encumbering the oil and gas produced from properties sold to NOV from Northstar.  (ECF No. 51 at 11 "Summary Judgment No. 3").  However, no evidence is provided regarding the validity of these liens beyond their statutory authorization under Texas and Louisiana law.  Northstar disputes this, pointing to its summary judgment evidence that the properties in question had a negative value as of the petition date, creating a fact issue as to the validity of these liens.  A clear question of

fact exists regarding both the valuation of the property as well as the appropriate time frame when this valuation should occur.  Accordingly, the M&M Lien Claimants Summary Judgment No. 3 is denied.

Summary Judgment Nos. 4-6 seeks to establish the validity of liens on the South Pass 86, High Island 443, and High Island 571 properties.  (ECF No. 51 at 12).  The evidence for this consists of Northstar's first day declaration that no mortgages exist on this property as well Northstar's purported incorporation of Schedule 2.2 that the properties had positive values. (ECF No. 51 at 12–19).  However, this evidence is contradicted by the balance of Northstar's argument in its complaint and summary judgment evidence that suggests the properties in question had negative fair market values as of the petition date.  (ECF No. 61 at 8).  A genuine issue of material fact exists regarding both the value of these properties as well as the time period when the valuation should be determined.  Consequently, the M&M Lien Claimants' motion for summary judgment is denied.

Summary judgment No. 7 concerns the West Cameron 20 property which the M&M Lien Claimants allege has a positive value according to the terms of the DIP Order.  As discussed earlier, the terms of the DIP Order may provide evidentiary weight, but that evidentiary weight is not conclusive.  Northstar has presented opposing evidence demonstrating that as of the petition date, that West Cameron 20 was negative in value due to P&A liability.  As a result, the parties have demonstrated a genuine issue of material fact and this motion for summary judgment is also denied.

III.   Lien Priority

The M&M Lien Claimants' also seek judgments deeming their liens senior in priority based on Louisiana and Texas laws.  (ECF No. 51 at 13, 16).  The perfection and priority of liens

on two properties are governed by Louisiana law: South Pass 86, West Cameron 20.  (ECF No. 51 at 12, 16).  Texas law determines the validity and priority of liens on the High Island 443 and High Island 571 leases.  (ECF No. 51 at 12–16).

In its summary judgment motion, the M&M Lien Claimants allege they hold properly perfected liens which trace back to the time when the materials and labor were provided, and their liens are senior in priority to First and Second Liens asserted by First National Bank of Central Texas and U.S. Bank National Association.  (ECF No. 50 at 2–3; ECF No. 51 at 13). The M&M Lien Claimants argue that the First and Second Liens only attach to "legacy assets" which do not include the oil and gas properties at issue here.  They further allege that the relevant mortgages were perfected after the M&M Lien Claimants had perfected their liens in accordance with state law.  (*See e.g.,* ECF No. 51 at 14).  This, in turn, entitles them to priority over the First and Second Lienholders.  (*See e.g.,* ECF No. 51 at 14).

Despite this assertion, the M&M Lien Claimants neither present evidence nor quote the specific terms of the purported after acquired property clauses in the First and Second Liens. (ECF No. 51 at 13).  Thus, their motion for summary judgment regarding priority of their liens is denied.

*IV.    Amounts Owed to M&M Lien Claimants*

The M&M Lien Claimants also argue that they are owed specific amounts for labor and material provided to Northstar based on lien affidavits they have provided.  (ECF No. 51 at 8–9). Northstar concedes that these materials and labor were provided in the requested amounts.  (ECF No. 61 at 5).  Accordingly, the Court awards the M&M Lien Claimants partial summary judgment regarding the amounts owed (but not as to whether the amounts are secured) with respect to work performed on the following properties:

| M&M Lien Claimant | Property | Amount Owed |
|---|---|---|
| Coastal | West Cameron 20 | $24,343.00 |
| DSS | High Island 571 | $10,157.64 |
| Stallion | High Island 571 | $5,460.00 |
| Stallion | High Island 571 | $4,216.00 |
| Wood Group | High Island 443 | $11,884.75 |
| Wood Group | South Pass 86 | $68,089.93 |
| Wood Group | West Cameron 20 | $60,411.86 |

V.      *Attorney's Fees and Interest*

Summary Judgment No. 2 alleges that the M&M Lien Claimants' liens entitle them to prepetition interest and attorney's fees based on Texas and Louisiana Laws, and that co-defendant NOV assumed such obligations when it purchased certain properties from Northstar. (ECF No. 51 at 9–10).  This assertion fails to recognize that the M&M Lien Claimants have yet to establish the validity of their liens on the property in question.

The provisions of the Texas Property Code, which the M&M Lien Claimants cite to justify their interest and attorney's fees, limit a lease owner's damages to the contractual amount for materials provided and work performed.  *See* TEX. PROP. CODE § 56.006.  The M&M Lien Claimants then conclude that this justifies their award of interest and attorney's fees because these "arise under the Defendants' contracts with the Debtor."  However, the M&M Lien Claimants' summary judgment motion does not cite such contracts, nor do they quote any contractual language entitling them such an award.  (*See* ECF No. 51 at 9–10).  The sole evidence they present consists of a single 163-page document which consolidates invoices, lien affidavits, service agreements, and return receipts.  (*See* ECF No. 52-1).  Two "Master Service Agreements" in which Northstar contracted with Wood Group and Stallion, contain a payment section which is silent regarding interest in the event of default.  (ECF No. 52-1 at 68–69; 155). Furthermore, the provisions of the Texas Property Code which allow an award of attorney's fees

also require the Court to consider whether those fees are "equitable and just." *See* TEX. PROP. CODE § 53.156. The M&M Lien Claimants have provided no evidence regarding the equities of this award and whether they are appropriate.

The M&M Lien Claimants argument that they are entitled to fees and interest is based on Louisiana law which allows materialmen a "privilege for labor, services, and supplies" which includes interest and a 10% award of attorney's fees, LA. REV. STAT. §§ 9:4862(B), 9:4863; (ECF No. 51 at 11). Even if the M&M Lien Claimants establish a right to such fees and interest, Northstar has demonstrated a fact issue regarding whether the properties at issue had sufficient value to support a claim for attorney's fees and interest under 11 U.S.C. § 506(a)(1). (ECF No. 61 at 5). An award of fees and interest is also foreclosed by the M&M Lien Claimants' failure to cite evidence regarding NOV's purported assumption of the obligations. The threadbare assertion that "NOV assumed the indebtedness to the Defendants" without additional evidence demonstrating how this occurred is insufficient to entitle the M&M Lien Claimants to summary judgment. As a result, the M&M Lien Claimants' motion for summary judgment regarding interest and attorney's fees is denied.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **November 5, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE