United States Bankruptcy Court
Southern District of Texas

**ENTERED**
September 12, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 16-34028 |
| **NORTHSTAR OFFSHORE** | § | |
| **GROUP, LLC,** | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |
| | § | |
| **NORTHSTAR OFFSHORE** | § | |
| **GROUP, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 17-3406 |
| | § | |
| **ACADIANA COATING &** | § | |
| **SUPPLY, INC.,** *et al.*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION

This adversary proceeding concerns whether the claims of certain creditors of Northstar Offshore Group, LLC are secured by liens on oil and gas properties Northstar owned when it filed its bankruptcy petition.

The Remaining Defendants are Stallion Offshore Quarters, Inc., Wood Group PSN, Inc., Coastal Crewboats, Inc., Diverse Scaffold Solutions, LLC, and Benton Energy Services Co. Summary Judgment is sought only as to claims held by the Remaining Defendants that are purportedly secured by the Estate's property located at the locations listed on Exhibit "A" to this opinion (the "Undervalued Properties").

Each of the liens is statutory only. The statutory liens only provide protection for work done at a specified location.

All Claims held by the Remaining Defendants that relate to work performed at the Undervalued Properties are unsecured.

## BACKGROUND

On August 12, 2016, Montco Oilfield Contractors, LLC, Alliance Offshore, LLC, and Alliance Energy Services, LLC filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against Northstar Offshore Group, LLC. Case No. 16-34028, ECF No. 1. Northstar consented to relief and converted the case to a chapter 11 case on December 2, 2016. Case No. 16-34028, ECF No. 88. On December 22, 2017, the Court confirmed Northstar's Second Amended Plan of Liquidation. Case No. 16-34028, ECF No. 1078.

On February 3, 2017, the Court approved debtor-in-possession financing for Northstar. Case No. 16-34028, ECF No. 326. Although the DIP Order generally gave first priority liens on assets to the DIP lender, those first priority liens were not senior in priority to "Senior Statutory Liens." *See* Case No. 16-34028, ECF No. 326 at 16. Senior Statutory Liens were statutory liens that were senior in priority to pre-petition secured lenders.

On September 27, 2017, Northstar filed this adversary proceeding against twenty-six creditors who asserted allegedly secured claims against Northstar. ECF No. 1. The Defendants asserted statutory mineral liens against certain properties that Northstar owned prior to the bankruptcy and either sold or retained through its plan of liquidation.

Northstar has settled its disputes with most of the original Defendants. On December 19, 2019, Northstar filed a first amended complaint against the six remaining Defendants: Benton, Coastal, DSS, Stallion, Wood Group, and NOV. ECF No. 110.

Northstar moves for partial summary judgment, arguing that the claims held by the Remaining Defendants that pertain to locations listed on Exhibit "A" are unsecured. Northstar's motion rests on two principal

arguments: (1) that there is no value in the Undervalued Properties for a lien to attach; and (2) that any liens on the Undervalued Properties held by the Remaining Defendants are junior to other liens that substantially exceed the value of the properties. ECF No. 114 at 10, 35–37. Summary judgment in Northstar's favor will be granted.

Northstar supports its summary judgment motions with an expert opinion. The Remaining Defendants have not controverted the expert opinion. The expert's report provides opinions on the valuation of the subject properties as of both the petition date and the date of the asset purchase agreement for the sale of the properties.

On November 5, 2020, Benton filed a *Notice of Automatic Stay* explaining that an involuntary Chapter 11 petition had been filed against it in the United States Bankruptcy Court for the Eastern District of Louisiana. ECF No. 135. On December 10, 2020, the Court issued an order staying the adversary proceeding until termination of the automatic stay arising from Benton's bankruptcy. ECF No. 138. On May 5, 2021, Northstar filed a *Notice of Dismissal of Bankruptcy Case* to notify the Court of the dismissal of Benton's case. ECF No. 140. On April 10, 2024, the Court entered an order requiring the parties to submit a statement on the remaining issues in this case. ECF No. 150. The parties filed the required statement, and Northstar filed a revised proposed order on its motion for summary judgment. ECF Nos. 152, 153.

The Court now considers Northstar's motion.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.,* 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. Of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may

not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## DISCUSSION

Northstar's motion for summary judgment is unopposed. Despite the fact that it is unopposed, the Court has a duty to review the record to determine whether the motion should be granted. The record supports a finding that the Remaining Defendants' claims subject to the motion are unsecured because there is no value to support their claimed liens on the properties.

### I. THE MOTIONS AGAINST NOV ARE DENIED AS MOOT

"A claim is moot when a case or controversy no longer exists between the parties." *Kovac v. Wray*, 449 F. Supp. 3d 649, 653 (N.D. Tex. 2020) (quoting *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017), *as revised* (July 3, 2017)). "Mootness can arise in one of two ways: First, a controversy can become moot when the issues presented are no longer 'live.' A controversy can also become moot when the parties lack a legally cognizable interest in the outcome." *Id.* (internal quotation marks and citations omitted) (quoting *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)).

Northstar's motion for summary judgment seeks findings against NOV. Northstar also has a pending motion to exclude NOV's expert witness. ECF No. 115. Following the filing of the motions, Northstar's claims against NOV were settled and dismissed with prejudice. ECF No. 145. Northstar concedes that the motion for summary judgment should be denied with respect to its claims against NOV. ECF No. 152 at 5. Northstar also concedes that the motion to exclude should be denied. ECF No. 152 at 5. No defendant has expressed any reliance on NOV's expert report.

Because no controversy exists between Northstar and NOV, the motion to exclude and the motion for summary judgment as to NOV are denied as moot.

## II. THE REMAINING DEFENDANTS' CLAIMS AGAINST NORTHSTAR ARE UNSECURED

"Properly filing a proof of claim constitutes prima facie evidence of the claim's validity and amount." *McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998) (citing Fed. R. Bankr. P. 3001(f)). "The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail. . . . If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'" *Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm.* (*In re Fid. Holding Co., Ltd.*), 837 F.2d 696, 698 (5th Cir. 1988) (quoting *In re WHET, Inc.*, 33 B.R. 424, 437 (D. Mass. 1983)).

"Under the Bankruptcy Code, the secured lender has the burden of proof on the issue of validity, priority and/or extent of its lien on the property." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003) (citing 11 U.S.C. § 363(o)). A creditor also carries the burden of proving the value of collateral securing its purported lien. *In re Solis*, 576 B.R. 828, 832 (Bankr. W.D. Tex. 2016) ("It makes sense that if the creditor has the burden of proving the amount of the creditor's allowed secured claim, the creditor should also have the burden of proving the value of the collateral from which that amount is determined.").

> Under § 506(a)(1) of the Bankruptcy Code, a claim
>
> is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). The value of the collateral is "determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." *Id.* A creditor's

claim is accordingly secured only to the extent the collateral has value to satisfy the claim.  *See id.*

### A. The Subject Properties Have No Value to Secure the Remaining Defendants' Claims

Northstar alleges the Remaining Defendants' claims relating to the Undervalued Properties are secured by no value, rendering the claims unsecured under § 506(a)(1).  The only evidence in the summary judgment record on property valuations is the report submitted by Northstar's expert, Erica Bramer.  ECF No. 117.  Ms. Bramer has reported that the following properties have either zero or negative value as of the voluntary petition date and the date of sale of the properties[1]: Eugene Island 184, High Island 442, Ship Shoal 202, Ship Shoal 202A, South Pass 86, West Cameron 20, West Cameron 21, West Cameron 44, West Cameron 269, West Delta 36, and West Delta 39.  ECF No. 117 at 6.

Stallion asserts a $5,460.00 lien against Eugene Island 184.  ECF No. 114-5 at 53–54.  Ms. Bramer calculated the fair market value of Eugene Island 184 on the voluntary petition date and the asset sale date as negative $2.8 million and negative $3.5 million respectively.  ECF No. 117 at 6.  Stallion has not presented any evidence to rebut this finding.  Because the evidence demonstrates the property has no value, Stallion's $5,460.00 claim is unsecured.

---

[1] In a prior Memorandum Opinion, the Court left open the issue of the appropriate date for valuation of the properties under § 506(a)(1) of the Bankruptcy Code.  *See* § 506(a)(1) ("Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . .").  The Court found that, under the Fifth Circuit's holding in *In re Houston Regional Sports Network, LP*, 886 F.3d 523, 530–31 (5th Cir. 2018), it could not conclude that the petition date was the appropriate valuation date for the properties in light of the potential change in values when the properties were sold.  ECF No. 95 at 13–14.  Under Ms. Bramer's uncontested expert report, the subject properties had zero or negative value as of both the petition date and sale date, producing the same result regardless of which date is applied to the § 506(a)(1) analysis.

Stallion asserts a $5,460.00 lien against High Island 442. ECF No. 114-5 at 14–15. Wood Group asserts a $4,296.94 lien against the property. ECF No. 114-6 at 226–27. Ms. Bramer calculated the fair market value of High Island 442 as negative $1.8 million on the voluntary petition date and negative $2.1 million on the asset sale date. ECF No. 117 at 6. Stallion and Wood Group have not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Stallion's $5,460.00 claim and Wood Group's $4,296.94 claim are unsecured.

Stallion asserts a $27,450.00 lien against Ship Shoal 202. ECF No. 114-5 at 43–44. Ms. Bramer calculated the fair market value of Ship Shoal 202 as $0 on both the voluntary petition date and the asset sale date. ECF No. 117 at 6. Stallion has not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Stallion's $27,450.00 claim is unsecured.

There are three asserted liens against West Cameron 20: Coastal ($24,353.00), DSS ($11,052.00[2]), and Wood Group ($60,411.86). Case No. 16-34028, ECF No. 528 at 25–26l; ECF Nos. 114-2 at 12, 114-3 at 16, 114-6 at 167–68. Ms. Bramer determined the fair market value of West Cameron 20 as negative $1.6 million on the voluntary petition date and negative $3.6 million on the asset sale date. ECF No. 117 at 6. These Defendants have not presented any contradicting evidence. Because the evidence demonstrates the property has no value, Coastal's $24,353.00 claim, DSS's $11,052.00 claim, and Wood Group's $60,411.86 claim are unsecured.

Wood Group asserts a $253,785.72 lien against West Cameron 21. ECF No. 114-6 at 103–04. Ms. Bramer calculated the fair market value

---

[2] DSS's proof of claim lists this amount as an unsecured claim. ECF No. 114-3 at 16. DSS has not attached to the proof of claim or supplemented the record with a lien affidavit or other document evidencing a lien on West Cameron 20. Northstar seeks summary judgment that DSS does not have a lien on West Cameron 20 "because it was originally pleaded as a secured claim in this adversary proceeding." ECF No. 114 at 15. To the extent DSS asserts a lien against West Cameron 20, the claim is unsecured for the reasons stated in this Section.

of West Cameron 21 as negative $827,703.00 on the voluntary petition date and negative $781,584.00 on the asset sale date. ECF No. 117 at 6. Wood Group has not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Wood Group's $253,785.72 claim is unsecured.

Wood Group asserts a $54,488.57 lien against West Cameron 44. ECF No. 114-6 at 68–69. Ms. Bramer calculated the fair market value of West Cameron 44 as negative $368.887.00 on the voluntary petition date and negative $405,622.00 on the asset sale date. ECF No. 117 at 6. Wood Group has not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Wood Group's $54,488.57 claim is unsecured.

Stallion asserts a $6,070.00 lien against West Cameron 269. ECF No. 114-5 at 22–23. Wood Group asserts a $3,783.68 lien against the property. ECF No. 114-6 at 32–33. Ms. Bramer calculated the fair market value of West Cameron 269 as negative $2.2 million on the voluntary petition date and negative $2.9 million on the asset sale date. ECF No. 117 at 6. Stallion and Wood Group have not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Stallion's $6,070.00 claim and Wood Group's $3,783.68 claim are unsecured.

Wood Group asserts a $30,193.61 lien against West Delta 36. ECF No. 114-6 at 19–20. Ms. Bramer calculated the fair market value of West Delta 36 as $0 on both the voluntary petition date and asset sale date. ECF No. 117 at 6. Wood Group has not presented any evidence to rebut this finding. Because the evidence demonstrates the property has no value, Wood Group's $30,193.61 claim is unsecured.

Wood Group asserts a $18,209.36 lien against West Delta 39. ECF No. 114-6 at 6–7. Ms. Bramer calculated the fair market value of West Delta 39 as $0 on both the voluntary petition date and asset sale date. ECF No. 117 at 6. Wood Group has not presented any evidence to

rebut this finding. Because the evidence demonstrates the property has no value, Wood Group's $18,209.36 claim is unsecured.

### B. Benton's Claim Against South Pass 86 Is Unsecured Because There Is No Value to Secure the Claim

Benton asserts a $65,296.00 lien against South Pass 86. ECF No. 114-1 at 9. Ms. Bramer calculated the fair market value of South Pass 86 as negative $299,454.00 on the voluntary petition date and negative $563,238.00 on the asset sale date. ECF No. 117 at 6. Benton has not presented any evidence on the value of South Pass 86.

Because the evidence demonstrates the property has no value, Benton's $65,296.00 claim is unsecured.

Northstar alleges that Benton's failure to respond to Northstar's requests for admission is deemed an admission by Benton that its claim is unsecured. The Court need not address the admissions dispute. That dispute is mooted by the uncontested factual allegations regarding value.

### C. Wood Group's Claim Against West Cameron 57 Is Unsecured Because It Is Junior to First National's Claim

Wood Group asserts a $67,394.59 lien again West Cameron 57. ECF No. 114-6 at 36–37. Northstar argues that Wood Group's claim against West Cameron 57 is not secured by a Senior Statutory Lien as defined by the Court's DIP Order, rendering it an unsecured claim.

Under the DIP Order, Senior Statutory Liens are defined as liens that are "(i) valid, enforceable and non-avoidable as of the Petition Date, (ii) timely perfected before or after the Petition Date as permitted by § 546(b) of the Bankruptcy Code, and (iii) senior in priority to the security interests and liens of the Prepetition Secured Parties." Case No. 16-34028, ECF No. 326 at 16. First National Bank of Central Texas is a Prepetition Secured Party who "holds a first priority, perfected security interest and liens in and to all assets owned by the Debtor."

Case No. 16-34028, ECF Nos. 105 at 8, 326 at 1.  First National holds a $24,764,818.23 claim against Northstar.  ECF No. 114-7 at 3.  The claim is secured by various mortgages, including on West Cameron 57.  ECF No. 114-7 at 3, 182.

Wood Group asserts a Louisiana Mechanics and Materialmen's lien ("M&M lien") on West Cameron 57.  ECF No. 114-6 at 36.  Under Louisiana law, an M&M lien for work performed on an oil well is established when

> (1) The claimant, who is a contractor, laborer, or employee begins rendering services at the well site.
> (2) Movables sold by the claimant to an operator or contractor are delivered to the well site.
> (3) Movables sold by the claimant to an operator or contractor are delivered to the well site.
> (4) Property leased by the claimant to an operator or contractor is placed on the well site for use in operations.

La. Stat. § 9:4864A.

According to Wood Group's recorded lien, its earliest date of work on West Cameron 57 is September 5, 2015, five months after First National's loan and security agreements.  ECF No. 114-6 at 36.  Wood Group's M&M lien on West Cameron 57 is not senior in priority to First National's mortgage on the property.

First National's $24 million claim far exceeds the $13.25 million sale price Northstar received for all of its properties pursuant to its asset sale.  Case No. 16-34028, ECF No. 792-1 at 14.  West Cameron 57 was included in the sale.  Case No. 16-34028, ECF No. 792-1 at 7–8, 57.  Because the proceeds of the sale are insufficient to satisfy First National's claim, there is no value to secure Wood Group's claim against West Cameron 57.  Wood Group has not presented any evidence to controvert this finding.

Wood Group's $67,394.59 claim is unsecured.

## CONCLUSION

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED 09/12/2024

_____
Marvin Isgur
United States Bankruptcy Judge

**EXHIBIT A**

Summary judgment is sought on the Remaining Defendants' purported secured claims against the following properties:

1. Eugene Island 184
2. High Island 442
3. Ship Shoal 202
4. South Pass 86
5. West Cameron 20
6. West Cameron 21
7. West Cameron 44
8. West Cameron 57
9. West Cameron 269
10. West Delta 36
11. West Delta 39